UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY FOX, et al.,

        Plaintiffs,

  v.                                 Case Number: 93-74615
                                              Honorable Julian Abele Cook, Jr.
                                              Magistrate Judge Paul J. Komives

MASSEY-FERGUSON INC., a division
of VARITY CORPORATION, a Delaware
corporation,

        Defendant.

_____

JOSEPH GOLDEN, et al.,

        Plaintiffs,

                                              Case Number: 93-40530
  v.                                 Honorable  Julian  Abele  Cook,  Jr..
                                              Magistrate Judge Paul J. Komives

LUCAS VARITY KELSEY HAYES,
a Delaware corporation and HAYES LEMMERZ
INTERNATIONAL, INC., a Delaware corporation,

        Defendants.

_____

ROBERT J. COLBY, et al.,

        Plaintiffs,

                                              Case Number: 94-7169
  v.                                 Honorable Julian Abele Cook, Jr.
                                              Magistrate Judge Paul J. Komives

MASSEY-FERGUSON, INC.., a division of
 VARITY CORPORATION, a Delaware corporation,

        Defendant.

_____

ORDER

These cases arise out of three separate lawsuits[1] in which the Court has entered orders that certified the petitioners, all of whom have been identified in this class action litigation as retirees, former employees and/or surviving spouses of the TRW Automotive controlled group ("TRW")[2] At various times thereafter, the parties in each litigation entered into settlement agreements, all of which generally required TRW to provide health care benefits to the class members for life.

According to these agreements, TRW was authorized to change the entity that was responsible for the administration of the health care benefits if it notified and received the consent from the Retiree Committee[3] for each affected class. The parties also agreed that if a dispute arose over a proposed change in the Administrator, their differences would be resolved by a federal judicial officer (i.e., magistrate judge).

In June of 2007, TRW sought to change the medical benefits Administrator for Medicare-eligible class members from Meritain Health Inc. to Humana Inc. ("Humana").[4] When the Retiree

---

[1]According to the Defendant, "[t]he TRW Automotive [is a] controlled group of corporations [which] includes Lucas Varity Automotive Holding Company and Kelsey-Hayes Company." The Lucas Varity Automotive Holding Company is the successor to the Massey-Ferguson corporation and the Lucas Varity PLC for the purposes of the settlement agreements in *Colby v. Massey-Ferguson* and *Fox v. Massey-Ferguson.* Moreover, the Kelsey-Hayes Company is the legal entity that is related to the Lucas Varity PLC and the Kelsey Hayes Company for the purposes of the settlement agreement in *Golden v. Lucas Varity Kelsey Hayes.*

[2]In *Fox,* the Court entered an order which certified the class on May 31, 1995. In *Golden,* the class was certified on April 27, 1995. In *Colby,* the class was certified by the Court on May 23, 1995.

[3]Under each agreement, the Retiree Committee is the designated entity that is responsible for monitoring the administration of the health care plans and the settlement agreements on behalf of the various classes of retirees.

[4]The proposed change in the Administrator was to apply only to medical benefits, whereas as the prescription drug, dental, vision and hearing benefits would continue to be

Committee in each case objected to this proposal, the parties submitted their dispute to a magistrate judge who initially rendered a decision in favor of the Plaintiffs. However and after a review of his conclusions in the three cases, he reversed each decision, and entered a ruling in favor of TRW on December 30, 2008.  An appeal by the Plaintiffs to this Court followed.

I.

In his challenged decision of December 30, 2008, the magistrate judge rejected some of the arguments that had been advanced by the Plaintiffs.  First, he disagreed with their assertion that the proposed change by TRW would reduce the level of benefits available to the retirees.  He also rejected the Plaintiffs' argument that forcing their class members to switch to Humana would violate 42 U.S.C. § 1395w-21.  It was his conclusion that TRW could comply with this federal statute as long as it (1) notified the class members of its intent to enroll them as a group in the Humana plan, and (2) provided the members of each class with an opportunity to opt-out.[5]  The magistrate judge also opined that the Plaintiffs' argument (i.e., class members may be denied treatment in the future or face higher out-of-pocket costs under the Humana plan) was without merit, noting that, in his opinion, the same is true under the current Administrator.  In modifying his December 30th ruling, the magistrate judge dismissed the Plaintiffs' policy concerns, *inter alia*, about the continued viability of the "Private Fee-For-Service" plans.

On January 12, 2009, the Plaintiffs filed motions in each of the three cases, all of which sought to vacate the decisions by the magistrate judge who, in their opinion, had incorrectly

---

handled by the current Administrator.

[5]The magistrate judge found that TRW was required  in § 13.3 of the *Golden* settlement to offer the Humana plan to its class members only as an optional Medicare alternative plan.

3

characterized the TRW proposal as merely a change in the Administrator rather than the substitution of a single plan of benefits which was entirely different from those that are currently provided to the class members under the parties' respective settlement agreements. As an example, the Plaintiffs submit that a Medicare-participating physician could refuse to treat a class member under the proposed Humana plan, which is not true for those retirees who are currently covered by Parts A and B under Medicare. Moreover, they contend that the mandatory participation by the class members in the Humana plan is specifically prohibited by 42 U.S.C. § 1395w-21 as well as by the parties' settlement agreements. In their view, if TRW only offers the proposed Humana plan, every class member who opts out will be left without any coverage under the parties' settlement agreements.

In its opposition papers, TRW argues that the Court does not have jurisdiction to address the issues under appeal inasmuch as the parties have agreed that any decision by a magistrate would be "final and binding." Thus, TRW submits that if the Court elects to revisit the magistrate judge's now-challenged decision, a reversal would be appropriate only under a limited set of circumstances; namely, if he (1) acted outside of his authority by resolving a dispute that had not been referred to him for a final resolution; (2) committed fraud, possessed a conflict of interest, or had acted dishonestly; or (3) neither construed nor applied the terms of the agreement. TRW, in characterizing all of the Plaintiffs' claims as being without merit, asserts that only the *Golden* settlement agreement requires the Humana "Private-Fee-for-Service" plan to be offered as an option - and even there, it bears no duty to maintain the original plans.

II.

The parties have stipulated that the terms of their settlement agreements should be interpreted according to Michigan law.  *Fox Agreement,* § 23.9 at 38; *Golden Agreement,* § 22.9 at 32; *Colby Agreement,* 26.9 at 40-41.  The courts in Michigan treat settlement agreements as instruments that are to be construed under the prevailing principles of contract law - not according to arbitration standards as TRW suggests. *Reicher v. SET Enterprises, Inc.*, 283 Mich. App. 657, 663 (Mich. App. 2009).  When interpreting a contract, a court is encouraged to discern the parties' intent by examining the language within the contract according to its plain and ordinary meaning.  *In re Smith Trust,* 480 Mich. 19, 24 (2008).  If the terms of a contract are clear, courts are obliged to enforce the terms of the parties' agreements as written (in the absence of any legally disabling issues) and may not create an ambiguity where none exists.  *Id.*; *see also, Frankenmuth Mutual Insurance Co., v. Masters,* 460 Mich. 105, 111 (1999).

With regard to the jurisdictional issue that has been raised by TRW, it should be initially noted that a federal court always has the inherent authority to enforce its judgments.  *Peacock v. Thomas,* 516 U.S. 349, 356 (1996).  Moreover, a federal court has a continuing authority over the enforcement of settlements despite the dismissal of an action in which the court compels the enforcement of a settlement agreement or expressly retains jurisdiction over the parties and the issues.   *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994).  In those situations in which a court retains authority over the parties as well as the issues, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."  *Id.* at 381.

In support of its position with regard to the jurisdictional issue, TRW cites language from the respective class members' settlement agreements which directs the magistrate judge to "make

5

a final and binding decision" after considering a dispute among the parties over any proposed change in an Administrator. *Fox Agreement,* § 18.4 at 31; *Golden Agreement,* § 17.4 at 29; *Colby Agreement,* § 20.4 at 32. TRW correctly argues that a plain reading of the parties' agreements - especially as it applies to the term, "final and binding"- must be defined and interpreted according to legally accepted principles. Thus, once an order from a magistrate judge is entered, the decision cannot be appealed. *See,* Oxford Dictionary (10th ed) 134, 530 (defining *final* as "allowing no further doubt or dispute" and *binding* as "involving a contractual obligation."). However, the Court cannot examine this clause in isolation from the remaining language in the parties' agreements for several reasons.

First, the parties have stipulated that (1) the "Settlement Agreement may be amended or modified only by a written instrument" which has been signed by TRW and the appropriate class representatives and (2) "[a]ny . . . amendment that would materially affect the level of Plan benefits shall be effective only if approved by the Court." *Fox Agreement,* § 23.2 at 37; *Golden Agreement,* § 22.2 at 31; and *Colby Agreement,* § 26.2 at 39. Furthermore and according to those provisions which authorize the magistrate judge to resolve disputes over pending changes in the Administrator, the parties have agreed that the judicial officer "will not have the authority to modify or amend [the] Settlement Agreement, but only to apply the Settlement Agreement, as written, to particular factual situations." *Fox Agreement,* § 18.4 at 31; *Golden Agreement,* § 17.4 at 28-29; *Colby Agreement,* § 20.4 at 32. A reading of these provisions together reveals that the contested ruling by the magistrate judge must be upheld as "final and binding" *unless* it modifies or amends the terms of the parties' agreements. If, as the Plaintiffs contend, the ruling by the magistrate judge materially modifies the level of the Plan benefits, it is not binding upon the parties since such changes would

be valid only if they are embodied in a written instrument that is signed by the parties and approved by the Court. Thus, the principal question before the Court is whether the magistrate judge's decision of December 30, 2008 modified the parties' settlement agreements in a way that "materially affect[s] the level of Plan benefits."

The settlement agreements among the parties require TRW to provide fully-paid healthcare benefits to class members "for the Duration of Coverage," which can be generally defined as being applicable during the life of the retiree, the retiree's surviving spouse, or the period of disability for the disabled employee. *See Fox Agreement,* § 1.14 at 10; *Golden Agreement,* § 1.15 at 12; *Colby Agreement,* § 1.15 at 8. However, none of the settlement agreements make coverage for Medicare-eligible class members contingent upon an enrollment in any particular type of Medicare plan. Yet, in his December 30, 2008 opinion and order, the magistrate judge effectively requires Medicare-eligible retirees to maintain their Medicare coverage through Medicare Part C.

Although it is true that the proposal by TRW would not reduce the class members' benefit coverage, an inquiry by the Court should not end there. By allowing TRW to unilaterally decide to administer benefits through a "Private-Fee-For-Service" entity, the magistrate judge imposed a new condition upon those class members who maintained Medicare as their primary insurance coverage. Under this directive, if those class members expressed a desire to retain those benefits that had been promised to them under the parties' settlement agreements as a supplement to Medicare, they would now be obligated to switch to Medicare Part C, and remove themselves from the federally administered original Medicare plan (Parts A and B).[6]

---

[6]According to the Centers for Medicare & Medicaid Services (CMS) - the entity that is responsible for the administration of the Medicare program - a "Private-Fee-for-Service" (PFFS) entity (such as Humana) is a type of Medicare Advantage Plan that is offered by a private

7

In these types of plans, it is the PFFS entity - and not Medicare - that decides how much the participant shall pay for any services received. *See,* YOUR GUIDE TO MEDICARE PRIVATE FEE-FOR-SERVICE PLANS*,* CMS 1. Although a PFFS plan must continue to cover all medically -necessary services that are covered by Medicare Parts A and B, CMS recognizes that (1) "not all providers will accept the plan's payment terms or agree to treat [participants]," and (2) such a provider should not "provide services to [the participant] except for emergencies," which will ultimately require the participant to find another provider that will accept the plan. *Id* at 2. In his now-challenged decision, the magistrate judge adopted TRW's solution to this dilemma by recommending that the affected class members simply pay the provider up front and, thereafter, seek reimbursement from Humana. The Plaintiffs protest that such a requirement will unfairly burden them as class members, many of whom are elderly, chronically ill and have dealt with certain health care providers for an extended period of time.

As the magistrate judge recognized, federal law requires that an enrollment in a Medicare Advantage Plan be optional and the result of an individualized choice. Federal law provides that "[s]ubject to the provisions of this section, each Medicare+Choice eligible individual . . . is entitled to elect to receive benefits . . . under this title--(A) through the original medicare fee-for-service program under parts A and B of this subchapter, or (B) through enrollment in a Medicare+Choice plan under this part, . . ." 42 U.S.C. § 1395w-21(a). This statute directs the Secretary of Labor to broadly disseminate information to Medicare beneficiaries about their coverage choices "in order to promote an active, informed selection among such options." 42 U.S.C. § 1395w-21(d)(1). With recognition

---

insurance company. YOUR GUIDE TO MEDICARE PRIVATE FEE-FOR-SERVICE PLANS*,* CMS 1. Sometimes referred to as Medicare "Part C," Medicare Advantage Plans combine traditional Medicare coverage under Part A (Hospital) and Part B (Medical).

that Congress intended for beneficiaries to freely decide the type of Medicare coverage desired by them, it would be improper to force an enrollment in Medicare Part C as a precondition to their receipt of continued settlement benefits. In the view of this Court, the challenged order from the magistrate judge which allows TRW to impose such a condition violates the letter and the spirit of the parties' settlement agreements.

In responding to this concern, the magistrate judge concluded that TRW could satisfy the choice requirements of 42 U.S.C. § 1395w-21 by simply notifying class members of its intent to switch to Humana and providing them with an opportunity to "opt-out." Nevertheless, it is clear from a reading of the record in this cause that if members of the class elect to exercise their statutory rights to remain in the original Medicare plan, they will lose the supplemental benefits that TRW had contracted to provide to them under the parties' settlement agreements. *See TRW Response in Fox* at 16; *in Golden* at 16; and *in Colby* at 16 ("TRW need not provide other separate plans as an option for those that may decide, for whatever reason, not to accept these benefits any longer and 'opt-out' of the enrollment."). Thus, a decision by a class member to remain in the original Medicare plan could, arguably, lead to the elimination of health care benefits for this entire segment of the beneficiaries. Although none of the settlement agreements make participation in Medicare Part C programs a prerequisite to receiving benefits, the decision by the magistrate judge leaves Medicare participants with only one choice: enroll in Medicare Part C or lose TRW's supplemental coverage. Such a material modification of the parties' contract can only be accomplished through a negotiated agreement between the parties that is approved by the Court.

### III.

For the reasons that have been stated above, the Plaintiffs' motion to vacate the decision of

December 30, 2008 by the magistrate judge is granted. As such, TRW is prohibited from switching the Medicare-eligible class members to Humana as a "Private-Fee-for-Service" plan unless and until it obtains the written consent of the class representatives which is subsequently approved by the Court.

IT IS SO ORDERED.


Dated:  December 18, 2009                S/Julian Abele Cook, Jr.
       Detroit, Michigan                     JULIAN ABELE COOK, JR.
                                            United States District Court Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on December 18, 2009.

                                                s/ Kay Doaks
                                                Case Manager